## FAIRFIELD *v.* AMHERST.

{ Aug. 11, 1876.

### *Discretion of court—Evidence.*

On a somewhat complicated statement of facts found by the court below, this court declined to revise the exercise of the discretion of that court in refusing a view.

Introductory to the testimony of a witness as to the condition of a highway where an accident happened, the plaintiff was permitted to testify that, in passing by the place of the accident, he told the witness that the accident happened there. *Held*, correct.

FROM HILLSBOROUGH CIRCUIT COURT.

CASE, for personal injuries occasioned by defect in a highway in said town. The evidence tended to show, that on the highway leading from New Boston to the village of Amherst, about twenty rods south of the line of Mont Vernon, there was a culvert extending diagonally across the road; that the gutter or ditch on the east side of the road was obstructed by a ledge extending across it and into the travelled part of

the highway, so that the water could not pass down on that side of the road, but was discharged through said culvert into the gutter or ditch on the west side of the road; that the culvert was insufficient at times of severe and sudden rains to discharge all the water collected in the ditch on the east side of the road, and the water at such times ran over the travelled part of the road, and thereby washed the dirt and earth from the covering stones of the culvert, thereby leaving them exposed; that the wheel rut on the west side of the road ran between two of the covering stones of the culvert, which were about five inches apart; that the top of the west edge of the east of the covering stones was about five inches higher than the rut at its side; that the rut between the stones was smooth and even; that the west edge of said stone next to the rut was worn and rounded off for about two or three inches from the top; that on the east side of the road, in the wheel track, was another covering stone, on the south side of which the earth came within some two inches of the top of the south edge of the stone, but sloped gradually away to the south, down the hill, so that at the distance of one foot from the edge the earth was about five inches lower than the top of the edge; that on the east side, in the wheel track, another stone was some five inches higher than the earth immediately south of it; that the plaintiff was driving on said road to the south with a pair of horses and a load of railroad ties, going upon a walk; that when he arrived at the culvert the forward wheels of his wagon went upon the stone, and when at the highest point of the rock, on the west side, the wheel suddenly slipped into said hole, and immediately after the other side ran off the rock, and he thereby received a sudden jerk which threw him off from the load where he was sitting, causing the injury of which he complains.

The evidence also tended to show, that a short time after the accident the town caused said alleged defects to be repaired; that in so doing a channel was blasted through the aforesaid ledge; that the said hole was filled by putting a stone into and another flat stone over it; and the culvert, for the whole width of the road over the alleged defect, and for some distance up and down the road, was covered with earth or gravel to the depth of about a foot, and covering up the wheel ruts on both sides of the travelled part of the road, over and on both sides of said culvert.

The evidence also tended to show, that, the earth being removed, the stone could be removed so as to see the top of the stone of said culvert, and the hole on the west side of it could be seen; but there was no evidence that the wheel ruts leading from it could be seen, or that the depression at the south side of the covering stone on the east side of the culvert could be seen, as they were on the day of the accident. The hole mentioned in the case was a space between the covering stones of the culvert, which had been previously covered with earth, but the earth had been washed out by the flow of the water over the road.

Upon these facts the defendants moved for a view, which motion the court denied; and the defendants excepted.

As tending to show notice to the town of the defective condition of the highway, the plaintiff was permitted, subject to the defendants' exception, to testify that he met Jones, one of the selectmen of the town, some time about haying time, at or near the village in Amherst;— that he told him (Jones) the road was in bad condition; that it ought to be fixed; that he had considerable teaming to do over that road; that he had about two hundred cords of wood and a number of railroad ties to go to the depot over that road; that Jones replied in substance that he would see to it, fix it, or something like that.

The road to which the plaintiff alluded, in the conversation with Jones, was about two miles in length. The plaintiff did not in said conversation refer to any particular part of said road, and the evidence showed that the place where the accident was claimed to have happened, and some other parts of said road, were repaired about the 25th of June and about the 13th of July.

Subject to the defendants' exception, the plaintiff also testified that since the accident, in passing over the road with one Jehormett, in passing by the place of the accident he told Jehormett that the accident happened there. The plaintiff afterwards called Jehormett, who testified in substance that an accident happened to him at about the same time at the same place.

The questions of law, including the proper exercise of discretion in denying the motion for a view, were transferred to the superior court by STANLEY, J., C. C.

*Sawyer & Sawyer, Jr.*, for the plaintiff.

*Wadleigh & Wallace*, for the defendants.

CUSHING, C. J. This case expressly reserves for the consideration of the court the exercise of discretion in the court below. It is peculiarly the province of the court at *nisi prius* to determine the facts on which those rulings depend which are said to be discretionary. The fact to be determined in this case was, that the situation and condition of the road had or had not remained so far unchanged as that a view of it would or would not tend to elucidate the case. The court below determined that fact against the view. I can see nothing in the evidence which would lead me to the conclusion that that determination was wrong; and I am not inclined to revise the doings of the court in that particular.

In the case of *Howe* v. *Plainfield*, 41 N. H. 135, it was held that the question whether or not the officers of the town had notice was immaterial, the question being whether the defect was such as that, under all the circumstances, the town were reasonably bound to have repaired the highway.

In that case, evidence that the selectmen had not notice, offered by the defendant town, was held to be rightly excluded. But certainly one of the elements for determining whether the town were reasonably

bound to repair might be the publicity which had been given to the defect by any talk or conversation with any of the inhabitants, whether officers or not.   I see nothing in the case from which it is apparent that the talk with Jones was before or after July 13.

The admission of what the plaintiff said to Jehormett was right.   The object was, to identify the place where the accident happened.

LADD and SMITH, JJ., concurred.

<em>Judgment on the verdict.</em>