Rockingham, }
June 27, 1908. }

LYDSTON, *Adm'r*, *v.* ROCKINGHAM COUNTY LIGHT & POWER Co.

Whether the act of a pedestrian in placing his hand upon a pole located in a highway by an electric company is a reasonable use of the way, or constitutes a willful intermeddling with the property of the corporation, is ordinarily a question of fact for the jury.

A prior statement of a witness inconsistent with his testimony is not evidence of the facts therein asserted, and is only admissible for the purpose of contradiction.

The practice of permitting the jury to view the locality of an accident after the cure of an alleged defect, subject to an instruction that the changed conditions are not to be regarded by them, is a matter within the discretion of the trial court and not subject to revision.

CASE, for negligently causing the death of the plaintiff's intestate by a current of electricity from the defendant's electric light wires. Trial by jury and verdict for the plaintiff. Transferred from the October term, 1907, of the superior court by *Wallace*, C. J.,

on the defendant's exception to the denial of a motion for the direction of a verdict in its favor.

The plaintiff's evidence tended to show that on the evening of July 3, 1906, and prior to the accident, there was trouble with the defendant's electric light lines in Portsmouth, caused by a leakage of electricity. The defendant was notified, but took no steps to shut off the current. On the pole at the intersection of Middle street and a cross-walk there was a running cable and weight coming to within three feet of the ground. The light there was then poor. The decedent's attention was called to that fact, and he knew that policemen sometimes kicked the pole to start up the light. He started to walk past the pole, and when near it put his hand to the pole and instantly received a shock which caused his death.

There was no insulator on the running cable at the time of the accident, but one had been put on before the trial. A view was had, subject to the defendant's exception. The jury were instructed that changes at the pole were irrelevant and should not be regarded by them.

*Page & Bartlett* and *Ernest L. Guptill*, for the plaintiff.

*Kivel & Hughes*, for the defendant.

PEASLEE, J. Travelers upon public highways have the right to do all acts reasonably incident to "a viatic use of the way." " There may be a difficulty in maintaining as law the proposition that a sidewalk, so situated as to be naturally and inevitably used for the hygienic purpose of a reasonable frolic of children on their way home from school, cannot be so used without being transformed from a way into a playground, or that by the gambols of young animals on their way to pasture their use of the road as a way is abandoned." *Varney* v. *Manchester*, 58 N. H. 430, 434. As to such acts, and as to the incidental diversions of persons of mature years, the rule is, " that the point at which such diversions pass the bounds of legitimate recreation as a proper use of a highway is to be found by solving the question of reasonable use as a question of fact." *Ib.* 437.

Applying this principle to the present case, it cannot be held as a matter of law that the act of a foot-passenger in placing his hand upon a pole erected in the street is an unreasonable use of the way. The soundness of this proposition does not seem to be seriously contested. The claim of the defence is that the evidence is conclusive that the decedent willfully intermeddled with its

property and so met his death.   The issue is as to the probative value of the evidence in the case.

The only witness to the accident was the wife of the decedent. She testified she told her husband the light was not burning properly, and that he had once told her that policemen started the light up by kicking the pole.   As he was walking past the pole he put his hand upon it and instantly fell.   It was a rainy night.   The decedent was a heavy man, fifty-eight years of age, and habitually careful about electrical appliances and about walking in slippery places.   Upon this evidence alone the question whether the decedent put up his hand as a traveler lawfully might, or whether he shook the cable to make the light burn, might well be left to the jury.

There was, however, further evidence.   It might have been found that the deceased was intending to cross the street at this point, and in that event he would not be unlikely to put his hand on the pole as he was about to make the turn.   His hand was burned in but one place—across the palm.   Had he grasped the wire, it would be likely that there would have been other burns. "The case is not one of a choice between two or more probable causes conceded to exist, but involves merely the power of the jury to determine as matter of fact the non-existence of the causes" alleged by the defendant.   *Boucher* v. *Larochelle*, 74 N. H. 433.

There was also evidence that the witness had said that her husband took hold of the cable to make the light burn.   She testified that her only knowledge on that subject was her own conclusion from the facts above recited.   But if her explanation of this statement was found to be false, the statement itself did not become positive evidence of the facts she stated.   Its only legitimate use was to contradict the different version she gave on the witness stand.   *Tabor* v. *Judd*, 62 N. H. 288; 139 Briefs and Cases 139; 2 Wig. Ev., *s.* 1018.

It is claimed that the defendant was not negligent, because its employees all testified that they never knew a running cable to become charged and that they had no reason to anticipate such an occurrence.   An expert in electrical engineering testified that these cables were likely to become charged by the crossing of wires or by excessive moisture, that this cable had no circuit breaker and was in a dangerous condition, and that he called the attention of the defendant's superintendent to it several years before the accident.   It was for the jury to determine whether this witness told the truth.   If it was found that he did, it would follow that the defendant's employees either testified falsely or were grossly incompetent.

"It may be generally regarded as of doubtful utility to allow a

view when the condition of things has been changed; . . . it may be allowed in the discretion of the court, to give to the jury a degree of familiarity with the locality which would render the evidence more intelligible, but a caution would be needed to prevent the jury from being misled." *Dewey* v. *Williams*, 43 N. H. 384, 387. "A cure of the alleged defect may in some cases unavoidably be brought to the attention of the jury, as for example where a view is taken. But in every trial matters may come to the knowledge of the jury which they cannot lawfully consider in making up their verdict. Whenever this happens, it is the duty of the court to instruct them that such matters are irrelevant and not to be regarded." *Aldrich* v. *Railroad*, 67 N. H. 250, 254. In the present case the procedure above indicated was adopted. The court found that a view would help the jury to properly understand the case. The statute places the determination of this question within the discretion of the court (P. S., *c.* 227, *s.* 19), and it has not been the practice to attempt to revise its exercise. *Fairfield* v. *Amherst*, 57 N. H. 479.

The request to charge that the plaintiff could not recover was properly denied for the reasons before stated. The evidence was not conclusive to the point that he "voluntarily exposed himself to danger which he had full opportunity to avoid." The instruction that "the plaintiff's intestate had no right to touch the wire of the defendant company unless it interfered with his passage along the highway," amounts to ruling as a matter of law upon a question of fact. The question was to be settled by the application of the doctrine of reasonable use, and the instruction was rightly refused. So, too, the request to instruct that if the decedent "voluntarily touched the running cable" there could be no recovery was an attempt to limit a highway traveler's right to an extent not warranted by the decisions in this state. *Varney* v. *Manchester*, 58 N. H. 430.

*Exceptions overruled.*

All concurred.